1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                                **DISTRICT OF NEVADA**

8   ANTHONY PRENTICE,                    )
                                         )
9                     Plaintiff,         )        3:09-cv-0627-RCJ-VPC
                                         )
10  vs.                                  )
                                         )        **ORDER**
11  NEVADA DEP'T. OF CORRECTIONS,        )
    *et al.*,                            )
12                                       )
                      Defendants.        )
13  _____     )

14          Plaintiff Anthony Prentice, a prisoner at the Ely State Prison, has filed his amended

15  complaint alleging violations of his constitutional rights under 42 U.S.C. § 1983.  The complaint is

16  subject to the provisions of 28 U.S.C. § 1915 and the court's review under that statute is discussed

17  below.  Plaintiff has also filed a motion "for Court to Order Ely State Prison to Allow Rev. Prentice to

18  Make Legal Copies of this Action" (docket #9).  Plaintiff contends that he has been informed that he has

19  reached the limit of his allowed copies and that he cannot proceed with the litigation if he is unable to

20  make copies.  This motion shall be denied subject to renewal if the matter proceeds beyond screening

21  and is served upon defendants.

22  **I.      Screening Pursuant to 28 U.S.C. § 1915A**

23          Federal courts must conduct a preliminary screening in any case in which a prisoner

24  seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

25  § 1915A(a).  In its review, the Court must identify any cognizable claims and dismiss any claims that

26  are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief

1  from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),(2).  Pro se pleadings,

2  however, must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir.

3  1988).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that

4  a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

5  violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42,

6  48 (1988).

7         In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation

8  Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of

9  poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may

10  be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.

11  § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is

12  provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under

13  § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses

14  a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions

15  as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could

16  not be cured by amendment.  *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

17         Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v.*

18  *Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim

19  is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that

20  would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making

21  this determination, the Court takes as true all allegations of material fact stated in the complaint, and the

22  Court construes them in the light most favorable to the plaintiff.  *See Warshaw v. Xoma Corp.*, 74 F.3d

23  955, 957 (9th Cir. 1996).  Allegations of a pro se complainant are held to less stringent standards than

24  formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404

25  U.S. 519, 520 (1972) (per curiam).  While the standard under Rule 12(b)(6) does not require detailed

26

factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id., see Papasan v. Allain*, 478 U.S. 265, 286 (1986).

All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II.     Discussion**

To prevail under section 1983, a plaintiff must demonstrate that he has suffered a violation of rights protected by the constitution or federal statute, caused by the conduct of a person acting under color of state law. *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff sets out allegations arising from a series of events involving prison officials refusing to recognize his religion and prison cell searches resulting in officials confiscating his Church of Creativity materials and other personal and political materials. He claims violations of his rights under the First, Fourth, and Fourteenth Amendments. He seeks both injunctive relief and money damages.

Plaintiff identifies the Nevada Department of Corrections and various prison officials and staff at both the Ely State Prison and the High Desert State Prison, naming them in their personal and official capacities. A person cannot be sued in their official capacity for money damages. Only injunctive relief is available for defendants said to be acting in their official capacity. On the other hand, personal capacity suits seek to impose personal liability upon a governmental official for actions taken under the color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985).

Under the Eleventh Amendment to the Constitution, states and their political subdivisions are generally immune from actions in Federal courts as are agencies of the state. *See Taylor v. List*, 880

1  F.2d 1040, 1045 (9th Cir. 1989).  Congress has the power to override that immunity through legislation

2  authorized by section 5 of the Fourteenth Amendment.  *Will v. Michigan Dep't of State Police*, 491 U.S.

3  58, 66 (1989).  Pursuant to that power, Congress enacted 42 U.S.C. § 1983, which states in pertinent

4  part:

5         Every person who, under color of any statute, ordinance, regulation, custom,
       or usage, of any State or Territory or the District of Columbia, subjects, or
6       causes to be subjected, any citizen of the United States or other person within
       the jurisdiction thereof to the deprivation of any rights, privileges, or
7       immunities secured by the Constitution and laws, shall be liable to the party
       injured in an action at law, suit in equity, or other proper proceeding for
8       redress . . . . (emphasis added).

9  Section 1983 did not override the Eleventh Amendment immunity; the State of Nevada and any

10  governmental entity that is considered an "arm of the State" for Eleventh Amendment purposes are not

11  "persons" within section 1983's meaning of the term.  *See Doe v. Lawrence Livermore Nat. Laboratory*,

12  131 F.3d 836 (9th Cir. 1997) (quoting *Will*, 491 U.S. at 70).  The Nevada Department of Corrections shall

13  be dismissed from this action.

14         Preliminary Question: Is Church of Creator/Creativity a Religion?

15         "The right to exercise religious practices and beliefs does not terminate at the prison door.

16  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed

17  in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt,* 833

18  F.2d 196, 197 99th Cir. 1987);  *see also O'Lone v. Estate of Shabass,* 482 U.S. 342, 348 (1987).  In order

19  to implicate the Free Exercise Clause, the prisoner's belief must be both sincerely held and rooted in

20  religious belief.  *See Shakur v. Schriro,* 514 F.3d 878, 883-884 99th Cir. 2008) (emphasis added).

21         In reviewing plaintiff's complaint, the preliminary question in deciding whether he has

22  stated any cognizable claims for relief under the First Amendment's guarantee of freedom of religious

23  expression is determining whether the Church of Creativity or Church of the Creator is a religion.[1]  This

24  _____

25  [1]  Plaintiff identifies himself as "Reverend" and declares that he is an ordained  minister of the

26  (continued...)

4

1   very question was considered with comprehensive analysis by the United States District Court, Northern

2   District of California in December of 2009 in the case of *Connor v. Tilton,* 2009 WL 4642392

3   (N.D.Cal.).  In that action the court applied the criteria identified in *Africa v. Pennsylvania,* 662 F.2d

4   1025 (3d Cir.1981), and adopted by the Ninth Circuit in *Alvarado v. City of San Jose,* 94 F.3d 1223,

5   1229-30 (9th Cir. 1996).[2]

6        The plaintiff in *Africa* was a prisoner who was a member of an organization called

7   MOVE.  In analyzing the prisoner's claims that the prison's refusal to provide him with a specific diet

8   violated his right to free exercise of religion, the Third Circuit identified three criteria to assist courts

9   in determining whether a set of beliefs is religious:

10        First, a religion addresses fundamental and ultimate questions having to do
          with deep and imponderable matters. Second, a religion is comprehensive in
11        nature; it consists of a belief-system as opposed to an isolated teaching.
          Third, a religion often can be recognized by the presence of certain formal
12        and external signs.

13   *Africa,* 662 F.2d at 1032.

14        The court determined that the Church of the Creator (COTC) failed to meet the first

15   criterion of addressing fundamental and ultimate questions of deep and imponderable matters because

16        it is guided exclusively by secular concerns. Specifically, the end that
          Creativity seeks is a society that has been restructured through white
17        segregation, the attainment of which is not intertwined in any way with the
          contemplation of "deep and imponderable" matters analogous to those with
18        which traditional religions are concerned.

19

20

       [1](...continued)
21   Church of the Creator, "ecclesia creatoris" and a member of the Creativity Prison Ministries (CPM).
       He claims to have been the "Pontifex Tertius of the CPM/EC" making him the third highest ranked
22   member of the organization. (Compl. at 4.)

23        [2]  Other circuits have also adopted the *Africa* test.  *See  e.g., Detmer v. Landon*, 799 F.2d 929,
       931 (4th Cir.1986); *Wiggins v. Sargent*, 753 F.2d 663, 666 (8th Cir.1985); *United States v. Meyers*, 95
24   F.3d 1475, 1482-84 (10th Cir.1996) (citing with approval district court's reliance on *Africa* ) *cf. United
       States v. Meyers*, 95 F.3d 1475, 1482 (10th Cir.1996) (applying *Africa* to plaintiff's Religious Freedom
25   Restoration Act claim).

26

                                        5

1   *Connor*, 2009 WL4642392 at 12.

2          The court also concluded that the Church of the Creator did not meet the second criterion

3   of being comprehensive in nature, consisting of a "belief system" as opposed to an isolated teaching.

4   In reaching this conclusion the *Connor* court said:[3]

5          In the instant case, a relationship exists between the criterion of
       comprehensiveness and the criterion of fundamental and ultimate questions.
6          In particular, while plaintiff's evidence shows that Creativity's doctrines
       address a wide range of concerns, the evidence also shows that the essence
7          of Creativity is confined to "one question or one moral teaching" which,
       again, can be summed up by Creativity's Golden Rule: "What is good for the
8          White Race is the highest virtue; what is bad for the White Race is the
       ultimate sin."
9
       Based on the undisputed evidence, the Court concludes that plaintiff's belief
10         system, while governing his behavior in wide-ranging respects, is not
       sufficiently comprehensive to meet the second *Africa* criterion. *See [United*
11         *States v.]Meyers,* 906 F.Supp.[1475] at 1506 [10th Cir. 1996](finding belief
       system of Church of Marijuana not comprehensive where focus confined to
12         growth, use, possession and distribution of marijuana for personal therapeutic
       effect; distinguishing traditional religions that use mind-altering plants "to
13         attain a state of religious, spiritual, or revelatory awareness."); *cf. Strayhorn*
       [*v. Ethical Society of Austin*], 110 S.W.3d [458]at 471 [Tx. Ct. App.
14         2003](finding belief system of Ethical Culture focused on discovering truth
       through "experience of human interaction and ethical inquiry" comprehensive
15         because, "beyond simply asserting the primacy of a particular narrow idea or
       assumption, Ethical Culture attempts to create a comprehensive response to
16         the problems faced in life based on a common contemplative practice").

17  *Id.*

18          Finally, the *Connor* court agreed that the plaintiff had presented evidence that COTC had

19  formal and external characteristics that might be considered similar to those associated with more

20  traditional religions, but concluded that their sole purpose is to support a secular belief system. *Id.* at

21

22

23

24  _____
       [3] Having lost the right to use the name World Church of the Creator in a trademark violation
25  action, *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662
    (7th Cir.2002), the group has changed its name and sometimes refers to itself as "Creativity."
26

6

13. Thus, as the *Connor* analysis establishes, the Church of the Creator or Creativity is not a religion for purposes of the First Amendment.[4]

Count One

In his complaint, plaintiff alleges that he has continually sought recognition for his Church of Creativity religion, that his religious art, materials, and literature have been confiscated as racist materials and that he has been denied permission to receive his religious diet and pamphlets or other publications. He contends that the 'religious materials" have been confiscated during cell searches or transfers or during mail inspections and that he has not been given proper due process or notice of the confiscation.

First Amendment - Religious Expression

This court, adopting the *Connor* analysis discussed above, finds that plaintiff has failed to state a claim for relief for denial of his right to free religious expression because the Church of the Creator and/or Creativity is not a religion for purposes of the rights guaranteed under the First Amendment. As a result, the defendants the NDOC Director's and the Ely and High Desert wardens' and chaplains' refusal to recognize plaintiff's "religion" does not violate the First Amendment. This determination also undercuts plaintiff's claim against the defendant Publication Committee and the mail room staff and CERT officers for any failure to allow plaintiff to receive, create, or retain certain documents officials have determined to be racist.

---

[4] Plaintiff notes that courts have found that the Church of the Creator is "a federally recognized religion" However, this recognition came in the case of *Peterson v. Wilmur Communications, Inc.,* 205 F.Supp.2d 1014 (E.D. Wis, 2002), in the context of an employment discrimination claim brought under Title VII of the Civil Rights Act of 1964. The standard applied to determine whether a particular set of beliefs qualifies as a religion for purposes of Title VII, however, is broader than that applicable in the context of the First Amendment. *See id.* at 1018; *see also Friedman v. S. Cal. Permanente Med. Group*, 102 Cal.App.4th 39, 58-59, 66, 125 Cal.Rptr.2d 663 (2002), *cert.* denied, 538 U.S. 1033 (2003). For Title VII, the test for finding what is a religion requires the court simply to find that the beliefs "occupy the same plain in the life of the [individual] as an orthodox belief in god holds in the life of one clearly qualified." *Peterson* at 1018, quoting *United States v. Seeger,* 380 U.S. 163, 184 (1965).

Moreover, even if COTC/Creativity was to be considered to be a religion, the prison may still limit its practice as long as the condition or limitation imposed is reasonably related to the goals of safety and security in the prison. *U.S. v. Trainer,* 265 F.Supp.2d 589, 593 (D.Md.,2003); *see also Cutter v. Wilkinson,* 544 U.S. 709, 722 (2005) (applying the stricter standards derived under the RLUIPA to religious expression claims). Concerns for the safety and security of the prison, the inmates, and the staff are legitimate and primary issues for prison officials. The Ninth Circuit has upheld policies prohibiting preaching of racial hatred and violence. *See McCabe v. Arave,* 827 F.2d 634, 637 (9th Cir. 1987). With respect to the connection between the regulation of religious exercise and the legitimate penological interest, evidence concerning anticipated problems, even though no actual problems have arisen from the prisoner's conduct, is sufficient to meet this standard. *See Friedman,* v. Arizona, 912 F.2d 328, 332-33 (9th Cir. 1990). A policy to deny materials that are blatantly racist and that advocate violence or aggression against others because of their race is a policy related to a compelling state interest in that safety and security.

Plaintiff's claims related to the denial of his freedom of religious expression, including claims of denied religious recognition, denied or confiscated religious materials and denied religious diet shall be dismissed.

Due Process - Searches and Disciplinary Charges

In count two, plaintiff complains that he was subjected to disciplinary charges, including restitution for damages to a mattress and a cell wall when that property was damaged at the time it was issued to him. He contends that his cellmate informed the correctional officers that the damage has been there before plaintiff and that a Senior C/o was aware of it. Plaintiff complains that despite these alleged facts, the Senior C/O's statement or knowledge was not introduced at the hearing and plaintiff was convicted and sanctioned with restitution orders and disciplinary segregation. He contends there was no evidence to support his conviction.

Procedures that must be provided to prisoners in disciplinary matters if the minimum requirements of procedural due process are to be satisfied include: advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). Inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Id.* at 566.

Plaintiff does not state that he did not receive proper notice or a written statement of factfinding. He does not complain that he asked for the Senior C/O as a witness or that his absence was not adequately explained. He does, however, acknowledge that he had been transferred to another institution before the disciplinary hearing was conducted, making it difficult, if not impossible for the Senior C/O to testify in person. Moreover, plaintiff alleges that he appealed the findings and sanctions. Thus, he received the due process required in a prison disciplinary setting. Count two fails to state a claim for relief.

Count Three - Due Process

In count three, defendant claims that he was denied his personal property, including personal photos of "friends from the streets," artwork of a religious and political nature, personally written religious and political articles, and various pamphlets and publications of the Church of the Creator, without being afforded proper notice of the confiscation. He further contends he was written up and charged with gang activity for possessing the photos, artwork, articles and newsletter.

The facts as alleged by plaintiff belie his contention that he was not given notice of the seizure of his property. In fact, he was given disciplinary charges - notice of the impropriety of his possession of the items seized. Plaintiff's contention that he should be able to keep these materials because he is entitled to his own political views and artistic expression does not withstand a review under *Turner v. Safley,* 482 U.S. 78, 89 (1987) which holds that a prison regulation that impinges on

First Amendment rights "is valid if it is reasonably related to legitimate penological interests."  In this case, the materials plaintiff believes he should be able to retain and the political views and artistic expressions he believes he is entitled to promote racist attitudes.  Such views and beliefs impinge upon the security of the prison and the safety of inmates who are of all political and racial stripe.  The prison officials can properly deny plaintiff the right to possess and distribute such items based on those security concerns.

<u>Count Four - Search and Seizure Rights/Due Process and Equal Protection</u>

In this count, plaintiff again complains of the seizure of certain personal items including two photo albums, two fire boxes, a personal blanket and personal photos.  He claims he did not receive any unauthorized property form for the items and was not informed "as to why they were confiscated."  He alleges that during a move from Ely State Prison to High Desert State Prison certain other items of person property were removed, lost or stolen including photos of his children, a personal towel and a Norelco razor.  When the missing items were pointed out to officials as missing, those officials denied knowledge of their whereabouts.  Plaintiff contends that defendants "clearly confiscated [his] personal property in violation of due process, noting a failure to provide notice of the items and the reason for the confiscation.  Plaintiff also contends that his efforts to use official channels of communication - the grievance and kiting system, were unsatisfactory in that officials refused to respond to his communications.

In *Hudson v. Palmer*, 468 U.S. 517, 527 (1984), the United States Supreme Court said "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."  The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  *Id.* at 525-26.   Thus, plaintiff has not stated a claim for unreasonable searches on the facts provided.  Additionally, there are adequate state tort and common law remedies available to address plaintiff's contention that he is missing personal property that is unlikely

10

1   prohibited under prison regulations. *Id.* at 530.  No constitutional claim arises from the missing personal

2   property, either under the Fourth or the Fourteenth Amendments, as plaintiff has a state law post-

3   deprivation remedy for those lost items.

4         The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

5   "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a

6   direction that all persons similarly situated should be treated alike. *Plyler v. Doe,* 457 U.S. 202, 216

7   (1982).  Discrimination in the administration of prison regulations based on race, religious affiliation,

8   gender or membership in some other "protected class," *see McLaughlin v. Florida*, 379 U.S. 184, 192

9   (1964); *Hirabayaski v. United States,* 320 U.S. 81, 100 (1943), or that impinge upon the exercise of a

10  "fundamental right" *see Dunn v. Blumstein,* 405 U.S. 330, 336 (1972), violates the Equal Protection

11  Clause.  *Plyler v. Doe,*  457 U.S. 202, 216-217 (1982).

12        Here, however, plaintiff cannot demonstrate that he is a member in a protected class or

13  that the regulations impinge on his fundamental rights because he has not fundamental right to express

14  or promote or practice the racially discriminatory views the Church of the Creator or Creativity espouse.

15  **III.     Conclusion**

16        Plaintiff has failed to state a claim for relief against any of the named defendants.  The

17  organization and beliefs he claims as his religion are secular in nature and do not fit the criteria for

18  religious protection under the First Amendment.  As a result, his claims under the equal protection clause

19  also fail.  His membership in the Church of the Creator or Creativity does not put him in a protected

20  class.  Prison officials' actions in confiscating or denying him access to racist and gang related materials

21  are not discriminatory.  Finally, he has not stated a claim for unreasonable search or seizure in the loss

22  of his non-prohibited personal property.  He may, if he wishes pursue state law remedies for those losses

23  in the state courts.

24        **IT IS THEREFORE ORDERED** that the motion for copywork (docket # 9) is

25  **DENIED.**

26

11

**IT IS FURTHER ORDERED** that the Nevada Department of Corrections is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Amended Complaint is **dismissed** for failure to state a claim. The Clerk shall enter judgment accordingly.

DATED: This 19th day of October, 2010..

_____
UNITED STATES DISTRICT JUDGE

12